TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00615-CR







Joe Paxton Adams, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT


NO. 4585, HONORABLE ROYAL HART, JUDGE PRESIDING







Appellant Joe Paxton Adams pleaded guilty to driving while intoxicated, third
offense. See Tex. Penal Code Ann. §§ 49.04(a), .09(b) (West Supp. 2000). The district court
adjudged him guilty and, pursuant to a plea bargain, assessed punishment at imprisonment for four
years, suspended imposition of sentence, and placed appellant on community supervision. The
only issue on appeal is whether the police officer who arrested appellant had a reasonable basis
for stopping him in the first place. We conclude that he did not and will reverse the judgment of
conviction.

Winters police officer Mark James Welander testified that around 5:30 p.m. on
June 7, 1997, he "was dispatched to the Dairy Queen in Winters on a report that Mr. Joe Adams
had been in the Dairy Queen restaurant and the clerks believed that he was intoxicated. The
dispatch further notified me and said that Mr. Adams was driving his blue pickup truck and the
clerks were worried that he was going to drive off . . . ." Welander was acquainted with
appellant and knew he drove a blue pickup. The officer also knew that appellant "takes several
medications for different things regarding his mental status" and had been convicted of driving
while intoxicated. He added, "I have dealt with him before and he had been drinking . . . and
. . . it didn't take me by surprise when I got the call." Welander later learned that the dispatch
was based on a telephone call to the police by a person who refused to give a name.

Welander immediately drove to the Dairy Queen, where he saw appellant in his
blue pickup in the drive-through lane. The officer parked and waited for appellant to drive away
from the restaurant a few minutes later. He then followed appellant for six blocks before stopping
him. The officer acknowledged that appellant did not drive erratically or violate any traffic law. 
The officer answered affirmatively when asked by the prosecutor, "The basis of your stop was
strictly the call about a disturbance of a possible intoxicated person at the Dairy Queen, your
personal knowledge about the Defendant, his mental history, his drinking history, his behavior
history?" Welander agreed with the prosecutor's characterization of the stop as "[b]asically a
public-safety-concern type stop."

Appellant moved to suppress all evidence obtained as a result of the stop on the
ground that the officer did not have a constitutional basis for detaining him. Appellant does not
advance a separate state constitutional claim. Because the facts are undisputed and the district
court's ruling does not turn on the credibility of a witness, we will review the order overruling
the motion to suppress on a de novo basis. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).

A police officer may stop and briefly detain a person for investigative purposes if
the officer, in light of his experience, has a reasonable suspicion supported by articulable facts that
criminal activity may be afoot. See Terry v. Ohio, 392 U.S. 1, 30 (1968). The reasonableness
of a temporary detention must be examined in terms of the totality of the circumstances. See
Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A temporary detention is justified
when the detaining officer has specific articulable facts, which taken together with rational
inferences from those facts, lead him to conclude that the person detained is, has been, or soon
will be engaged in criminal activity. See id. A reasonable suspicion means more than a mere
hunch or suspicion. See Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). A
detention is not permissible unless the circumstances objectively support a reasonable suspicion
of criminal activity. See id. 

While an anonymous tip or telephone call may justify the initiation of an
investigation, it alone will rarely establish the level of suspicion required to justify a detention. 
See Alabama v. White, 496 U.S. 325, 329 (1990); Davis v. State, 989 S.W.2d 859, 863 (Tex.
App.--Austin 1999, pet. ref'd). Normally, a police officer must have additional facts before the
officer may reasonably conclude that the tip is reliable and an investigatory detention is justified. 
See Davis, 989 S.W.2d at 863. An officer's prior knowledge and experience, and his
corroboration of the details of the tip, may be considered in giving the anonymous tip the weight
it deserves. See id. at 864. But the corroboration of details that are easily obtainable at the time
the information is provided will not lend support to the tip. See id.

In this cause, Welander confirmed the anonymous caller's statement that appellant
was at the Dairy Queen in his blue pickup. These facts, however, were apparent to any observer,
and their corroboration gave the officer little, if any, reason to credit the caller's further allegation
that appellant was intoxicated. As the officer conceded at the suppression hearing, the only real
corroboration he had for the tip was his familiarity with appellant's reputation and record of
convictions for driving while intoxicated.

Welander was entitled to take his knowledge of appellant's previous behavior into
consideration when deciding whether to detain him for investigation. Had he acted immediately
upon locating appellant at the Dairy Queen, he might have been justified in confronting him. See
Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). But he was also required to
consider his personal observations of appellant on the afternoon in question. The officer watched
appellant for several minutes at the Dairy Queen without observing any unusual behavior, and
then followed him as he drove for six blocks. Appellant did not commit a traffic offense, nor did
the officer see any other indication of intoxication. While the officer's previous dealings with
appellant may have tended to corroborate the anonymous caller's information, the first-hand
evidence of his own eyes on the occasion in question tended to contradict that information. In
effect, the officer's observation of appellant at the Dairy Queen and as he drove for six blocks
reduced his reliance on the tip and lessened any justification for appellant's detention. While the
question is a close one, we conclude that the totality of the circumstances known to Officer
Welander did not objectively support a reasonable suspicion that appellant was driving while
intoxicated at the moment he was detained.

The opinions cited by the State are distinguishable on their facts. In Glenn v. State,
967 S.W.2d 467, 470-71 (Tex. App.--Amarillo 1998), pet. dism'd, 988 S.W.2d 769 (Tex. Crim.
App. 1999), the anonymous informer's tip was corroborated both by the police officer's previous
knowledge of the suspect's criminal activities and by the informer's accurate description of the
suspect's future behavior. In State v. Adkins, 829 S.W.2d 900, 902 (Tex. App.--Fort Worth 1992,
pet. ref'd), the police officer saw the suspect commit a traffic offense after receiving the
anonymous tip that he was driving while intoxicated.

In an apparent reference to the statement that this was "basically a public-safety-concern type stop," the State argues that the officer was authorized to stop appellant to investigate
the possibility that he "had some other problem affecting his own health and safety, as a
community care-taking concern." Texas has recently recognized the community caretaking
exception to the Fourth Amendment warrant requirement. See Wright v. State, No. 297-98 (Tex.
Crim. App. Dec. 15, 1999). Pursuant to this exception, a police officer may stop and assist an
individual whom a reasonable person, given the totality of the circumstances, would believe is in
need of help. See id., slip op. at 6. In the cause before us, however, there is no evidence that
Welander stopped appellant out of a concern for his personal health or welfare. The officer did
not testify that appellant appeared to be in distress or otherwise indicate a belief that appellant
needed assistance. See id. Insofar as the officer's testimony reveals, he stopped appellant strictly
for the purpose of investigating the suspected criminal violation. 

Because we hold that appellant's motion to suppress should have been granted, the
judgment of conviction is reversed and the cause is remanded for further proceedings.



 


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Reversed and Remanded

Filed: January 21, 2000

Do Not Publish



avis v. State, 989 S.W.2d 859, 863 (Tex.
App.--Austin 1999, pet. ref'd). Normally, a police officer must have additional facts before the
officer may reasonably conclude that the tip is reliable and an investigatory detention is justified. 
See Davis, 989 S.W.2d at 863. An officer's prior knowledge and experience, and his
corroboration of the details of the tip, may be considered in giving the anonymous tip the weight
it deserves. See id. at 864. But the corroboration of details that are easily obtainable at the time
the information is provided will not lend support to the tip. See id.

In this cause, Welander confirmed the anonymous caller's statement that appellant
was at the Dairy Queen in his blue pickup. These facts, however, were apparent to any observer,
and their corroboration gave the officer little, if any, reason to credit the caller's further allegation
that appellant was intoxicated. As the officer conceded at the suppression hearing, the only real
corroboration he had for the tip was his familiarity with appellant's reputation and record of
convictions for driving while intoxicated.

Welander was entitled to take his knowledge of appellant's previous behavior into
consideration when deciding whether to detain him for investigation. Had he acted immediately
upon locating appellant at the Dairy Queen, he might have been justified in confronting him. See
Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). But he was also required to
consider his personal observations of appellant on the afternoon in question. The officer watched
appellant for several minutes at the Dairy Queen without observing any unusual behavior, and
then followed him as he drove for six blocks. Appellant did not commit a traffic offense, nor did
the officer see any other indication of intoxication. While the officer's previous dealings with
appellant may have tended to corroborate the anonymous caller's information, the first-hand
evidence of his own eyes on the occasion in question tended to contradict that information. In
effect, the officer's observation of appellant at the Dairy Queen and as he drove for six blocks
reduced his reliance on the tip and lessened any justification for appellant's detention. While the
question is a close one, we conclude that the totality of the circumstances known to Officer
Welander did not objectively support a reasonable suspicion that appellant was driving while
intoxicated at the moment he was detained.

The opinions cited by the State are distinguishable on their facts. In Glenn v. State,
967 S.W.2d 467, 470-71 (Tex. App.--Amarillo 1998), pet. dism'd, 988 S.W.2d 769 (Tex. Crim.
App. 1999), the anonymous informer's tip was corroborated both by the police officer's previous
knowledge of the suspect's criminal activities and by the informer's accurate description of the
suspect's future behavior. In State v. Adkins, 829 S.W.2d 900, 902 (Tex. App.--Fort Worth 1992,
pet. ref'd), the police officer saw the suspect commit a traffic offense after receiving the
anonymous tip that he was driving while intoxicated.

In an apparent reference to the statement that this was "basically a public-safety-concern type stop," the State argues that the officer was authorized to stop appellant to investigate
the possibility that he "had some other problem affecting his own health and safety, as a
community care-taking concern." Texas has recently recognized the community caretaking
exception to the Fourth Amendment warrant requirement. See Wright v. State, No. 297-98 (Tex.
Crim. App. Dec. 15, 1999). Pursuant to this exception, a police officer may stop and assist an
individual whom a reasonable person, given the totality of the circumstances, would believe is in
need of help. See id., slip op. at 6. In the cause before us, however, there is no evidence that
Welander stopped appellant out of a concern for his personal health or welfare. The officer did
not testify that appellant appeared to be in distress or otherwise indicate a belief that appellant
needed assistance. See id. Insofar as the officer's testimony reveals, he stopped appellant strictly
for the purpose of investigating the suspected criminal violation. 

Because we hold that appellant's motion to suppress should have been granted, the
judgment of conviction is reversed and the cause is